UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THOMAS SMITH,

                    Plaintiff,

    v.                                                    Case No. 23-cv-1176-pp

SHELBY WENDRICK, *et al.*,

                    Defendants.

---

**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT (DKT. NO. 34) AND DISMISSING CASE**

---

Plaintiff Thomas Smith, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his constitutional rights. Dkt. No. 1. The court screened the complaint and allowed the plaintiff to proceed on an Eighth Amendment claim based on allegations that he repeatedly informed the defendants of a mouse problem in his cell during a six-month lockdown and that they did not do anything in response to his complaints. Dkt. No. 17 at 6. The defendants have filed a motion for summary judgment. Dkt. No. 34. On May 21, 2025—two days after the court received that motion from the defendants—the court ordered that the plaintiff's response materials were due on June 18, 2025 and that if by that date, the court did not receive his response materials or an explanation for why he could not timely file a response, the court would resolve the defendants' motion without considering a

1

response from the plaintiff. Dkt. No. 42. The court has not received the plaintiff's response.

The last time the court heard from the plaintiff was on March 13, 2025, when the court received from him a motion for an extension of time. Dkt. No. 30. The return address on the envelope in which the plaintiff mailed that motion was Green Bay Correctional Institution, where he had been incarcerated since he filed his complaint in June 2023. Dkt. No. 30-1. The Wisconsin Department of Corrections locator website shows that as of the date of this order, the plaintiff remains incarcerated at Green Bay Correctional Institution. The court mailed the May 21, 2025 order setting the response deadline to the plaintiff at Green Bay Correctional Institution, and the court has no reason to believe the plaintiff did not receive the order. The court will do what it said it would do, and decide the defendants' motion without input from the plaintiff. This order grants the defendants' motion for summary judgment and dismisses the case.

I.      **Defendant's Motion for Summary Judgment, Dkt. No. 34**

A.      Facts

During the events described in the complaint, the plaintiff was incarcerated at Green Bay Correctional Institution and defendants Wendrick, Eiting and Segerstrom worked there. Dkt. No. 36 at ¶¶1, 2, 4, 7.

1.      *Plaintiff's Complaints about Mice*

On April 19, 2023, the plaintiff submitted complaint GBCI-2023-5712 in which he said that for about a week there had been mice and other vermin

coming into his cell, eating his food and leaving droppings. Id. at ¶14. The institution complaint examiner dismissed the complaint and recounted that the exterminator came to Green Bay at least once a month and that there were measures in place to exterminate vermin. Id. The plaintiff did not file any other grievances related to vermin or mice. Id.

On June 11, 2023, the plaintiff wrote an information request slip addressed to the warden, complaining that he had received a conduct report for covering the bottom part of his door to prevent mice from entering. Id. at ¶12. The plaintiff did not submit any other written complaints about mice. Id.

### 2. *Plaintiff's Deposition Testimony*

The plaintiff testified at his deposition that he first saw a mouse a day or two after moving into cell A72. Id. at ¶45. He testified that he saw mice throughout the day in the cell hall and that he saw a mouse in his bed at one point. Id. at ¶¶46-47. The plaintiff never actually saw a mouse eat his food, but he would notice tiny bite marks on the food in his canteen bag. Id. at ¶¶49-50. He estimated that mice had gotten into his canteen food three or four times until he moved it to a higher spot. Id. at ¶55. The plaintiff never ate the food the mice had gotten into, was never bitten by a mouse and never got sick from mice being in his cell. Id. at ¶¶56-58. He also testified that the mouse issue had started to improve around August 2023 and that he has not seen a mouse since then. Id. at ¶¶59-60.

When asked who he had contacted about the mouse issue, the plaintiff testified that he had spoken to Correctional Officer Bebo, Sergeant Green,

Sergeant Whiting, the previous North Cell Hall unit manager Kohler and

Correctional Officer Johnson; none of these individuals are defendants. Id. at

¶43. The plaintiff testified that he did not communicate with any other staff

members about the mouse problem. Id. at ¶44.

> 3. *Eiting's Involvement with Pest Control*

Defendant Eiting, a financial program supervisor, worked in an office and

was not usually out in the cell halls. Id. at ¶¶33-34. As part of his duties,

Eiting was charged with securing the contract for a pest control company,

although he did not have final say over approval of the contracts. Id. at ¶¶34-

35. Under these contracts, the vendors were classified as independent

contractors, and Eiting did not have direct, day-to-day supervisory control over

how they conducted their business. Id. at ¶37. Eiting was designated as the

contact person for the pest control vendors. Id. at ¶18. But when the vendors

came to Green Bay, security staff escorted them around the prison. Id.

Before June 2023, Green Bay contracted with Wil-Kil Pest Control to

address any pest issues. Id. at ¶38. Wil-Kil came to the institution once a

month to do pest extermination. Id. In May or June of 2023, officials at Green

Bay determined that Wil-Kil was not doing a sufficient job. Id. Green Bay then

hired Batzner Pest Control, which started work in June 2023. Id. at ¶¶38-40.

To address the mouse problem, Batzner increased the number of mouse traps

around the institution. Id. at ¶41. Additionally, Batzner came to Green Bay

weekly for the first month of the contract, then twice per month for the next

4

three to four months. Id. Once the problem was under control, Batzner started coming to the institution monthly. Id.

Eiting was not personally responsible for exterminating mice and relied on the exterminator company to do that job. Id. at ¶¶16-17. The plaintiff never made any complaints directly to Eiting about the alleged mouse issues he was having in his cell. Id. at ¶¶ 33,44.

### 4. *Segerstrom's Involvement with Plaintiff*

Defendant Segerstrom worked as a sergeant during the relevant time. Id. at ¶7. The proper procedure for an incarcerated individual to report any necessary maintenance (or pest issues) was to go through the cell hall sergeant. Id. at ¶11. The sergeant then would report the issue to his or her supervisor. Id. at ¶19. Segerstrom was not personally responsible for controlling the mouse issue or exterminating vermin. Id. at ¶20. The only thing he could do was to notify the supervisor on duty when he received a complaint or saw a mouse in the cell hall and tell the supervisor where the mouse was located. Id. The supervisor then would inform the business office, and the business office would inform the exterminator company. Id.

Segerstrom relied on the pest control company to deal with the mouse problems. Id. at ¶24. Segerstrom was not the sergeant for the plaintiff's cell hall on the date in April 2023 that the plaintiff said in his inmate grievance that he saw mice in his cell. Id. at ¶23. The plaintiff did not contact Segerstrom regarding mice in his cell or eating his food. Id. at ¶44.

### 5. *Wendrick's Involvement with Plaintiff*

Defendant Wendrick worked as a correctional officer at the time relevant to this case. Id. at ¶2. As a correctional officer, Wendrick was not personally responsible for exterminating mice. Id. at ¶20. If an incarcerated person reported an issue about mice to her, she would tell her supervisor, who would run it up the chain of command. Id.

Once Wendrick notified a supervisor about a mouse complaint, she was usually directed to inform the incarcerated individual that he should stop throwing food on the cell halls and to place his food in the metal secured footlocker in his cell to prevent the mice from getting into and eating his food. Id. at ¶21. All cells at Green Bay have two footlockers with combination locks. Id. at ¶22. Personal items such as canteen items, personal hygiene products or other personal belongings may be kept in the footlockers. Id.

The plaintiff never personally complained to Wendrick about mice in his cell or that they were eating his food. Id. at ¶44. Wendrick knew that there was an exterminator company that did work at Green Bay and relied on the exterminator to take care of any pest issues. Id. at ¶20.

### B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d

665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

C.    Discussion

The defendants contend that the court should dismiss the plaintiff's conditions of confinement claim because he lacks evidence to show that he was subject to an extreme deprivation. Dkt. No. 35 at 9-13. The defendants also contend that they did not act with deliberate indifference. Id. at 14-17. Finally, the defendants contend that they are entitled to qualified immunity. Id. at 17-20.

To establish a constitutional violation with respect to prison living conditions, an incarcerated individual must be able to demonstrate both that (1) the conditions were so adverse that they deprived him "of the minimal civilized measure of life's necessities" (the claim's objective prong) and (2) the defendants acted with deliberate indifference with respect to the conditions (the claim's subjective prong). Townsend v. Fuchs, 522 F.3d 765, 773 (7th Cir. 2008) (quoting Farmer v. Brennan, 511 U.S. 832, 834 (1994)). The necessities of life include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting Lewis v. Lane, 816 F.2d 1165, 1171 (7th Cir. 1987)). Although "extreme deprivations are required," Delaney v. DeTella, 256 F.3d 679, 683 (7th Cir. 2001), and "routine discomfort[s]" do not suffice, Hudson v. McMillian, 503

U.S. 1, 9 (1992), "[s]ome conditions . . . may establish an Eighth Amendment violation in combination when each alone would not do so," and other conditions that may not be sufficiently serious for a short period of time, "can become an Eighth Amendment violation . . . if endured over a significant time." Gray, 826 F.3d at 1005 (citations omitted). "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." Townsend, 522 F.3d at 773. Establishing that an official acted negligently is not enough. "Instead, the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." Id.

Pest infestations may form the basis of an Eighth Amendment conditions of confinement claim, but a plaintiff must allege how extensive the infestation is and how the pests affect him. Smith v. Dart, 803 F.3d 304, 312 (7th Cir. 2015) (finding that "laundry list of pests [present at the Cook County Jail], without more, is not sufficient to state a constitution claim."); see also Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996) (plaintiff's allegations that cockroaches "were 'everywhere,' 'crawling on his body' (along with mice) and 'constantly awaken[ing]' him, and 'causing the environment to be unsanitary' " stated a cognizable claim under 42 U.S.C. §1983); Gray v. Hardy, 826 F.3d 1000, 1007 (7th Cir. 2016) (plaintiff's evidence of filthy living conditions, an alleged lack of cleaning supplies and prolonged pest infestation in his cell "present[ed] triable issues of fact for a jury [to] determine the degree of both

physical and psychological harm he suffered as a result of the infestations and dirt"); White v. Monohan, 316 F. App'x 385, 388 (7th Cir. 2009) (unpublished) (though a "close case," plaintiff stated claim where he alleged that bugs, cockroaches, spiders, wasps, and bees bit and stung him so often that he sustained permanent injuries, including scars, wounds, sores, and internal injuries).

The plaintiff testified that in April 2023, he saw mice in his cell hall and in his cell. He says that one time he saw one in his bed. The plaintiff also states that he noticed bite marks on his canteen food three or four times, until he moved his food to a higher spot. The plaintiff did not eat the food the mice had gotten into, was never bitten by a mouse and never got sick from mice being in his cell. He also testified that the mouse issue started to improve around August 2023, and that he has not seen a mouse since then. As of April 2023, a pest exterminator company came to Green Bay monthly. In June 2023, a new pest control company was hired, and that company increased the number of mouse traps and came to the prison weekly for the first month and twice-monthly for next three to four months. The plaintiff's minimal exposure to mice in his cell does not amount to a serious deprivation. See Sain v. Wood, 512 F.3d 886, 889 (7th Cir. 1996) (cell infested with roaches, while "certainly unpleasant," did not rise to the level of a constitutional violation).

Even if the conditions in the plaintiff's cell amounted to a serious deprivation, he has not established that any defendant acted with deliberate indifference. The plaintiff did not complain directly to any of the defendants

about his concerns about mice in his cell. The defendants had no knowledge of the plaintiff's concerns, nor did they have responsibility for addressing the concerns. The defendants lacked personal involvement in the events giving rise to the plaintiff's claims. See Minix v. Canarecci, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'").

A reasonable jury could not conclude that the defendants violated the plaintiff's constitutional rights. The court will grant the defendants' motion for summary judgment and dismiss the case.[1]

## II. Conclusion

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 34.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605

---

[1] Based on the court's determination that the plaintiff has not established a constitutional violation, the court will not address the defendants' contention that they are entitled to qualified immunity.

appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 15th day of July, 2025.

BY THE COURT:

HON. PAMELA PEPPER
Chief United States District Judge

11